**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CLEAR CREEK CONSULTING, INC.,

      Plaintiff,

v.

RIAN PEONIO

      Defendant.

---

## COMPLAINT AND JURY DEMAND

    Plaintiff Clear Creek Consulting, Inc., ("the Company" or "Clear Creek") hereby brings this Complaint against Defendant Rian Peonio ("Peonio") for violations of, *inter alia*, the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

### <u>INTRODUCTION</u>

    1.    This action arises out of Peonio's breach of his contractual obligations to the Company and his theft and unlawful use of the Company's trade secrets pertaining to its confidential and proprietary sales proposals, customer lists and contact information, customer database, sales leads, bidding and pricing information, pricing tools, and other confidential trade secrets.

    2.    Peonio, a former employee of the Company for over thirteen years and former Vice President of Services at the Company, later formed a competitor tax resolution company, Timberline Tax Group, LLC, in direct violation of the restrictive covenant and non-competition provision in the employment contract that he signed with the Company.  Peonio also recruited and offered employment to numerous employees of the Company, which was also in direct violation of the employment contract.

3.     Peonio unlawfully obtained and used the Company's confidential, proprietary and trade secret information on numerous occasions while employed by Timberline, to help Timberline gain an unfair and unlawful competitive advantage and, in turn, provide a benefit to himself.

4.     The Company initially learned of Peonio's unlawful competition and use of its trade secrets after he, together with the other former employees of the Company that he hired at Timberline, began soliciting Company clients by using, among other things, the Company's client lists, pricing, bidding, and customer information.

5.     On information and belief, Peonio unlawfully took and retained, without permission, numerous confidential and proprietary customer files, confidential proposal files for completed work, proprietary sales lead information, confidential customer reference and contact information, pricing formulas, bidding information and formulas, and other confidential and proprietary information generated by or prepared for the Company.  Peonio used this information and data to leverage a competitive advantage by targeting the Company's current and prospective customers.

6.     Peonio's unauthorized and unlawful use of the Company's information and data has caused serious financial damage to the Company, in excess of $200,000, and weakened its competitive advantage.  Absent judicial intervention, the Company will suffer additional harm.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper based upon 28 U.S.C. § 1331, 18 U.S.C. § 1832, 1836, *et seq*., and 28 U.S.C. § 1367.

8.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2), as the events described in this Complaint occurred in the District of Colorado.

4825-3920-9798.10

## PARTIES

9.      The Company is a Colorado corporation with its principal place of business at 285 Century Place, Suite 200, Louisville, CO 80027.  The Company is engaged in offering tax resolution services to individuals and companies both locally and nationwide.

10.      Defendant Rian Peonio is an individual residing in Colorado at 15621 W. 79th Pl., Arvada, Colorado, 80007.

## FACTUAL ALLEGATIONS

### PEONIO'S EMPLOYMENT CONTRACT WITH THE COMPANY

11.      In 2004, Peonio was hired by the Company as a Senior Para, an entry level sales position.  He entered into an employment contract with the Company at that time.  Peonio was promoted to the role of Vice President of Services around 2007.  In this role, Peonio managed over fifty (50) sales associates who were provided leads of clients by the Company.  Peonio was also responsible for overseeing all client contact with every associate and was in charge of defining specific goals related to that process.  As the second highest ranking employee of the Company, Peonio had access to all clients and contact information to all clients of the Company.

12.      On June 1, 2016, Peonio entered into a new and revised employment contract with the Company.[1]  The employment contract stipulated that Peonio would devote substantially all of his working time, attention and energies to the business of the Company and that Peonio would carry out the duties and responsibilities of the Company.  In the employment contract, Peonio acknowledged

---

[1] For the purposes of this Complaint, the 2016 employment contract is the controlling contract between the Company and Peonio.

that he owed a duty of good faith and honesty to the Company, that he would faithfully serve the

Company, and that he would promote the interests of the Company.

13. The employment contract also included a "Manager Confidentiality and Restrictive

Covenant" provision that included the following:

> As a manager . . . you acknowledge that you have been, and may in the future be, provided with, exposed to and had an opportunity to develop, learn and otherwise become aware of Confidential Information . . . . 'Confidential Information' means all information, including trade secrets, that is non-public information or data (whether oral, in writing, or in electronic form) of a competitively sensitive nature concerning Clear Creek and Clear Creek's business. This includes, but is not limited to, Clear Creek's products, product placement, research and development, present and future projections, operational costs and processes, pricing, cost or profit factors, quality programs, current business plans, marketing plans and methods, customer support plans and methods, customers, and future potential customers, suppliers or potential suppliers, contracts and bids and personnel, intellectual property, methodologies and technologies. You also acknowledge that as a manager of Clear Creek you have been and will be engaged in the implementation of management or executive functions.

> With respect to the identities, names, addresses, telephone numbers, email addresses, and other information regarding Clear Creek's clients and prospective clients, Manager expressly acknowledges all such information constitutes Confidential Information as defined herein. Manager further expressly acknowledges that he or she would not have any knowledge whatsoever pertaining to the identities, names, addresses, telephone numbers, email addresses and other information regarding Clear Creek's clients and prospective clients were it not for Manager's employment by Clear Creek. Manager also acknowledges that Clear Creek identifies and locates prospective clients through sophisticated methods and processes that were developed by Clear Creek at great expense and that are confidential and proprietary to Clear Creek.

> Clear Creek is an industry leader tax resolution firm and serves individuals and businesses across the United States. Clear Creek expends employee effort and large amounts of monies and effort in research, development and marketing. The continuing growth of Clear Creek (not only as a corporate entity but also for each employee like you) depends on the continuing creation of Confidential Information and Intellectual Property Rights. You agree that Clear Creek's restrictions on your activities, as specified in this Agreement, both during and after your employment with Clear Creek, are reasonable to protect both Clear

4

Creek's interests and your personal interests; and you recognize that your acceptance of such restrictions is important to the success of Clear Creek.

The Confidential Information is a valuable asset of Clear Creek and your promises of confidentiality contained in this Agreement are of a fundamentally special and valuable nature to Clear Creek for which Clear Creek cannot be compensated adequately in monetary terms if they are breached; and it is very important in the interests of Clear Creek that the Confidential Information not be used or disclosed except in accordance with Clear Creek's written consent and in Clear Creek's best interests.

14. The employment contract also stipulated that Peonio agreed both during and after the termination of his employment with the Company to keep all confidential information strictly confidential and in trust for the Company, to follow the policies of the Company regarding measures for maintaining the confidentiality of the confidential information, to not use, directly or indirectly, any confidential information except in the course of performing duties as a manager of the Company and for the sole purpose of furthering the Company's interests, to not use any confidential information in any way which may be reasonably considered detrimental to the Company, to not copy, reproduce or duplicate any confidential information without the prior written authorization of the Company, and to not disclose, directly or indirectly, any confidential information to any person, firm, corporation or entity, except in the course of performing employment duties with the Company.

15. The employment contract also specifically prohibited Peonio from directly or indirectly contacting or soliciting clients and customers of the Company on behalf of himself or on behalf of any other entity for the purpose of selling or supplying to such clients and customers tax resolution assistance or any other products or services provided by the Company to its clients and customers. The employment contract also prohibited such solicitation even if the source of the identities, names, addresses, telephone numbers, email addresses, and other

information regarding the Company's clients and customers is Peonio's own personal memory of such confidential information.

16. Under the employment contract, Peonio acknowledged and agreed that identities and names of the Company's customers and clients, in and of themselves, constitutes confidential information, and that using his personal memory, a telephone or similar directory, or information available on the internet or other publicly available information for the purpose of selling or supplying any of the Company's customers or clients tax resolution assistance or any other products or services provided by the Company to its clients and customers constitutes a breach of his obligations of the employment contract.

17. The employment contract further prohibited Peonio from directly or indirectly, and either actively or passively, soliciting or hiring (i) any employees of or consultants to the Company; or (ii) any employees of or consultants to the Company who terminated their employment or consulting arrangement with the Company within 180 days of the date of the termination of his employment by the Company.

18. The employment contract made clear that the restrictive covenant not to compete was to last for a period of twelve (12) months immediately following Peonio's termination of employment with the Company for any reason. During this twelve (12) month period, Peonio was prohibited from becoming engaged, directly or indirectly, as a principal, partner, director, officer, member, employee, agent or advisor, either individually or for any entity, that competes with the Company in the business of providing tax resolution services within seventy-five (75) miles of the Company's office.

**THE COMPANY'S TRADE SECRETS, CONFIDENTIAL INFORMATION AND DATA**

19.     At great expense and over the course of many years, the Company has created highly valuable proprietary, confidential and trade secret sales, estimating, pricing, and design information including, *inter alia*, the Company's sales leads and customer database, customer lists, customer buying preferences, customer reference lists, customer buying practices, customer bid preferences, past and future purchasing information, pricing and bidding strategies and formulas, bidding information, estimating data, proposal documentation, and business and industry data.   All this information is stored either electronically on the Company's servers located in Louisville, Colorado, which are restricted and password protected in confidential files and databases, or in some cases, in paper form in secure areas.

20.     The Company takes measures to guard closely and maintain the secrecy of all of its sensitive and valuable information including, without limitation, restricting access to only those employees with a specific need to know the information, and setting up security measures, including firewalls, to insure that unauthorized persons or competitors cannot access the servers containing the information.   This information is confidential and is not known outside of the Company, either by competitors or the general public.   In addition, the Company asks for and receives agreement from employees with whom it shares this information that this confidential and proprietary information will not be shared with or used on behalf of any other entity or individual.

21.     Peonio was specifically aware of the existence of the Company's proprietary and confidential information and trade secrets and the safeguards the Company had in place to prevent its dissemination to competitors or the general public and agreed to the same.

4825-3920-9798.10

22.     The information contained in the Company's files and databases has tremendous financial value to the Company, and it considers this information to be a differentiator in the tax resolution services industry.  The specific information contained within the Company's files and databases contain confidential and proprietary proposal files for potential clients, confidential proposal files for current clients, proprietary sales lead information, confidential customer reference and contact information, pricing formulas, bidding information and formulas that are highly valuable to the Company and its competitors.

23.     Over the years, the Company has paid employees and vendors hundreds of thousands of dollars to create and maintain this information.  Thus, the Company's information contains extensive and valuable market research that could not be duplicated or reproduced easily by any other competitor.  In other words, the information in the Company's servers is the backbone of the Company's sales, bidding, pricing, design and new business generation.  In the hands of a competitor, or an ex-employee working for a competitor, the Company's information could cause substantial financial harm to the Company, eliminate its competitive advantage, and usurp sales opportunities from the Company.

**PEONIO'S SEPARATION AGREEMENT WITH THE COMPANY**

24.     In the Fall of 2016, the Company was reorganized and Peonio's position at the Company was eliminated.  Peonio's employment with the Company was terminated effective September 16, 2016.

25.     Peonio entered into a separation agreement with the company which set forth the parties' obligations.  Pursuant to the separation agreement and after receiving sufficient consideration, Peonio stipulated, among other things, that he had delivered to the Company all

8

copies of all materials of any nature regarding the Company or any customer of the Company including, all documents that contain or refer to any trade secrets or other confidential or proprietary information belonging to the Company, and all books, records, accounts, sales materials, or any other documents relating to the Company. Peonio further stipulated that he would not retain any copies, reproductions, summaries, or notes of any materials which he was required to return to the Company.

### PEONIO'S BREACH OF HIS EMPLOYMENT CONTRACT AND SEPARATION AGREEMENT WITH THE COMPANY AND HIS MISAPPROPRIATION OF THE COMPANY'S TRADE SECRETS

26.     Peonio was an employee of the Company for over thirteen years. While an employee of the Company, he served as, among other things, Vice President of Services. He was privy to the Company's confidential, proprietary and trade secret sales, proposal files, lead-generation, design and pricing information as well as other confidential trade secrets as part of his job functions and as a necessary component of his employment.

27.     During his many years of employment with the Company in a management role, Peonio had access to the Company's restricted servers and access to all areas of the Company. Upon information and belief, Peonio, after his employment with the Company was terminated, made copies of the Company's proposal logs, proposal files, customer lists, database information, estimating and pricing tools and data, customer purchasing strategies and information, lead reports and other confidential information, and he unlawfully used this information during his employment at Timberline. Peonio's theft and use of this information was in direct violation of his separation agreement with the Company.

9

28.     Following the termination of his employment with the Company, Peonio became employed by Timberline as its managing partner.  On information and belief, Peonio started Timberline and/or played an integral part in its creation.

29.     Timberline, located only thirteen (13) miles away from the Company, is a direct competitor to the Company in the tax resolution services industry.  Like the Company, Timberline provides tax resolution services to companies and individuals both locally and nationwide.

30.     At Timberline, Peonio used, and is currently using, the Company's confidential, trade secrets and proprietary information with the intent to grow Timberline's business and to solicit and retain customers and clients of the Company.  Peonio was not authorized to retain such information for this purpose, and such use was not part of his employment or in any other way authorized, excused, condoned, or permitted by the Company.

31.     Peonio's employment with Timberline directly violates the non-competition provision in his employment agreement with the Company, which specifically prohibited Peonio's employment with a competitor in the tax resolution business for twelve (12) months following his termination with the Company and within seventy-five (75) miles of the Company's office.

32.     On information and belief, Peonio actively recruited the Company's employees and offered employment at Timberline to at least four former employees of the Company, including Travis Thompson ("Thompson") Joe Pirtz ("Pirtz"), Jason Spivak ("Spivak"), and Joe Dunigan ("Dunigan").  Thompson and Pirtz are former managers at the Company, and Spivak and Dunigan were former sales associates at the Company.

33.     Peonio's recruitment of the Company's employees directly violates his employment contract with the Company, which specifically prohibited directly or indirectly soliciting or hiring

any employees of the Company, including any employees who terminated their employment with the Company within 180 days of the date of their termination.

34. On information and belief, Peonio took with him to Timberline the Company's trade secrets and other valuable data and information to acquire new customers to Timberline, many of whom were the Company's existing or prospective customers, all in direct competition with the Company.

35. Indeed, within several months after Peonio left the Company, Timberline submitted bids and otherwise marketed directly to the Company's existing and prospective customers on behalf of Timberline and stole the Company's customers, which cost the Company substantial sums of money.

36. On information and belief, Peonio directed Timberline's sales team to use the Company's trade secret and confidential information, which Peonio supplied, to contact and acquire business from the Company's existing and prospective customers. Timberline had never done business with these customers prior to Peonio joining Timberline. Peonio knew that Timberline was soliciting the Company's existing and prospective customers based on his unauthorized theft and possession of the Company's trade secrets and confidential and valuable information and data of the Company as detailed herein. As a result, Peonio knew the specific details regarding the Company's customers, the Company's pricing methods, formulas and strategies, margins, and customers' buying preferences and patterns.

11

## FIRST CLAIM FOR RELIEF
### Permanent Injunction
### (Against Peonio)

37.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

38.     The Company seeks a permanent injunction enjoining Peonio from continuing his employment at Timberline, thereby enforcing the non-competition provision in the employment contract.  The Company also seeks a permanent injunction enjoining Peonio from using any of its trade secrets, information and data and mandating that Peonio return to the Company any and all trade secrets, information and data he has unlawfully obtained and/or used.

39.     Because the Company's remedy at law is inadequate and the danger of continuing injury exists, the Company seeks a permanent injunction.  The Company is threatened with losing customers, trade secrets, its competitive advantage and goodwill in an amount that may not be possible to determine.  Thus, the injunctive relief requested would not disserve the public interest.

40.     Peonio must be enjoined from continuing his employment at Timberline, restrained from any further use of the Company's trade secrets, information and data, and must be compelled to return all of the Company's trade secrets, information and data to the Company.

## SECOND CLAIM FOR RELIEF
### Theft of Trade Secrets Pursuant to the Defend Trade Secrets Act— 18 U.S.C. 1831, *et seq*.
### (Against Peonio)

41.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

42.     The Company undertook substantial efforts to maintain the secrecy of its valuable software, database, customer information, and other sales, pricing and bidding information and data

detailed herein that it had spent years compiling. Accordingly, these are all trade secrets of the Company.

43.     Peonio, who voluntarily signed a separation agreement containing non-disclosure provisions, subsequently acquired the Company's trade secrets by improper means by, *inter alia*, secretly stealing and retaining the Company's files after his employment with the Company ended for the sole purpose and motivation of using this confidential and proprietary information as leverage to gain an economic advantage for himself and to target the Company's current and prospective customers for the benefit of himself.

44.     Peonio intentionally and knowingly used the Company's confidential and proprietary information to bid on and acquire business from the Company's existing and prospective customers.

45.     Peonio knew or had reason to know that the Company's trade secrets were acquired for an improper purpose and by improper means. Peonio' actions constitute willful and malicious misappropriation of trade secrets.

46.     As a direct and proximate result of Peonio' misappropriation of the Company's trade secrets, the Company has lost and is threatened with losing valuable sales, customers, trade secrets, its competitive advantage, and good will and has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at trial together with injunctive relief, treble damages pursuant to 18 U.S.C. § 1832(b), exemplary damages and attorneys' fees.

### THIRD CLAIM FOR RELIEF
**Trade-Secret Misappropriation—C.R.S. § 7-74-101 *et seq.***
**(Against Peonio)**

47.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

4825-3920-9798.10

48.     The Company undertook substantial efforts to maintain the secrecy of its aforementioned trade secrets.

49.     Peonio subsequently acquired the Company's trade secrets by the aforementioned improper means.

50.     Peonio intentionally and knowingly used the Company's confidential and proprietary information to bid on and acquire business from the Company's existing and prospective customers.

51.     Peonio knew or had reason to know that the Company's trade secrets were acquired for an improper purpose and by improper means.  Peonio' actions constitute willful and malicious misappropriation of trade secrets.

52.     As a direct and proximate result of Peonio' misappropriation of the Company's trade secrets, the Company has lost and is threatened with losing valuable sales, customers, trade secrets, its competitive advantage and good will, and has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at trial together with injunctive relief, exemplary damages and attorneys' fees.

### FOURTH CLAIM FOR RELIEF
**Unfair Misappropriation of Business Values**
**(Against Peonio)**

53.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

54.     The Company and Timberline are direct competitors in the tax resolution services industry.

55.     The Company expended substantial amounts of labor, time, skill, and money developing, implementing, researching, procuring, protecting, and maintaining the aforementioned trade secret and confidential information.

56.     Peonio unfairly misappropriated the Company's expenditure of labor, skill, and money when Peonio intentionally and improperly stole and retained the Company's valuable trade secret information after his employment with the Company ended, for the sole purpose and motivation of using the Company's proprietary information to benefit himself and Timberline. More specifically, Peonio, among other things, intentionally and improperly used the Company's trade secrets and valuable information to target and acquire business from the Company's existing and prospective customers, thereby costing the Company substantial sums of money.  Upon information and belief, these customers were new to Timberline.

57.     As a proximate result of Peonio' misappropriation and use of the Company's trade secrets, data and information, the Company is threatened with losing customers, trade secrets, its competitive advantage, and goodwill, and has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Breach of Contract**
**(Against Peonio)**

58.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

59.     On June 1, 2016, Peonio entered into the aforementioned employment contract with the Company.

60.     The employment contract contained the aforementioned  restrictive covenant and covenant not to compete, whereby Peonio promised to refrain from entering into or engaging in the same or similar business and promised not to hire or cause anyone to be hired for a period of twelve (12) months from Peonio's termination of his employment with the Company.  The covenant was intended to protect the Company's confidential information and business interests, which are integral to the Company's operation.

61.     The Company has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the employment contract.

62.     After his employment with the Company ended, Peonio continuously breached the employment contract by engaging in competition with the Company and destroying the goodwill of the business by interfering with Plaintiff's relationship with its customers and employees.

63.     Peonio breached the employment contract by accepting employment with Timberline as its managing partner in violation of the terms of the non-competition provision in the employment contract.

64.     Peonio further breached the employment contract by inducing at least four employees of the Company, Thompson, Pirtz, Spivack, and Dunigan, to terminate their employment with the Company and accept employment with Timberline.

65.     Peonio further breached the employment contract by using at Timberline the Company's confidential, trade secret, and proprietary information to gain and economic advantage and to benefit himself and Timberline.

66.     As a proximate result of Peonio's breaches of the employment contract and other wrongful actions, the Company is threatened with losing customers, trade secrets, its competitive

advantage, and goodwill, and has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Peonio)

67.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

68.     The June 1, 2016, employment contract was a valid and binding agreement between the Company and Peonio.

69.     The employment contract contains an implied covenant of good faith and fair dealing, which is a covenant between the parties thereto that no party will take any action that interferes with the other party's ability and rights to perform its obligations under the employment contract, and that each party will take every action that the employment contract presupposes it will to effectuate the employment contract's purpose.

70.     Peonio breached his contractual obligations by encouraging the Company's employees to terminate their employment with the Company and accept employment with Timberline.

71.     Peonio further breached the employment contract by using at Timberline the Company's confidential, trade secret, and proprietary information to gain an economic advantage and to benefit himself and Timberline.

72.     As a proximate result of Peonio's breach of the implied covenant of good faith and fair dealing as described herein, the Company is threatened with losing customers, trade secrets, its

17

competitive advantage, and goodwill, and has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Breach of Duty of Loyalty
### (Against Peonio)

73.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

74.     Peonio, as the former Vice President of Services, owed and owes a duty of loyalty to the Company.

75.     Peonio breached his duty of loyalty to the Company by engaging in disloyal acts in anticipation of future competition with the Company and by soliciting and recruiting the Company's employees to obtain employment with Timberline.

76.     As a proximate result of Peonio's wrongful acts as described herein, the Company is threatened with losing customers, trade secrets, its competitive advantage, and goodwill, and has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at trial.  The Company has suffered damages and has incurred attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Business Advantage
### (Against Peonio)

77.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

78.     Peonio knew or had reason to know of the Company's ongoing and prospective business relationship with its clients and customers.

79.     Peonio, as former Vice President of Services of the Company and being in possession of the stolen trade secrets and valuable information and data, knew or had reason to know, among other things: the identity and particulars of clients that the Company did business with; the confidential and proprietary information submitted by the Company to its customers; the negotiated terms of each client contract; the scope, duration, and price of each client contract; the pricing and bidding formulas and methods the Company used to target and successfully acquire each customer; the needs of each customer, and the operational costs and profit margins associated with each customer contract.  In addition, Peonio knew this information regarding the Company's prospective customers.

80.     Peonio intentionally and improperly interfered with the Company's ongoing and prospective business relations with its existing and prospective clients by using its trade secrets, information and data as leverage to gain an economic and business advantage over the Company's clients and by interfering with the execution and/or performance of these customers' contracts and prospective contracts.

81.     As a proximate result of Defendant's intentional interference, the Company is threatened with losing existing and prospective customers, trade secrets, its competitive advantage, and goodwill, and it has suffered, and will continue to suffer, damages in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
**Breach of Confidential and Fiduciary Relationship**
**(Against Peonio)**

82.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

4825-3920-9798.10

83.     As a former employee of the Company, Peonio had a confidential and fiduciary relationship with the Company.

84.     The actions complained of herein constitute breaches of these confidential and fiduciary relationships between Peonio and the Company.

85.     As a direct and proximate result of these breaches, the Company is threatened with losing existing and prospective customers, trade secrets, its competitive advantage, and goodwill, and it has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
### Conversion
### (Against Peonio)

86.     The Company incorporates herein by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

87.     Peonio knowingly exercised control over valuable trade secrets and confidential and valuable information and data that properly belong to the Company.

88.     Peonio intentionally exercised dominion and control of the Company's trade secrets and confidential and valuable information and data which so seriously interfered with the Company's rights and control that Peonio should justly be required to pay the Company the full value of such trade secrets and confidential and valuable information and data.

89.     As a direct and proximate result of these breaches, the Company is threatened with losing existing and prospective customers, trade secrets, its competitive advantage, and goodwill, and it has suffered, and will continue to suffer, damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Company respectfully requests the following relief:

A.      Judgment in its favor and against Peonio on all claims;

B.      A permanent injunction against Peonio as specified herein and otherwise to enjoin his unlawful conduct as permitted by law

C.      Damages in excess of and no lower than $200,000, excluding exemplary damages, in an amount to be determined according to proof at trial;

D.      Treble damages pursuant to 18 U.S.C. § 1832(b);

E.      Liquidated damages pursuant to the employment contract;

F.      Reasonable attorneys' fees and costs, pursuant to C.R.S. § 7-74-105 and any other applicable law;

G.      Pre-judgment and post-judgment interest on any award of damages to the fullest extent permitted by law; and

H.      Any additional legal or equitable relief that the Court deems just and proper.

**JURY DEMAND**

The Company demands a jury trial on all issues so triable.

21

DATED: April 21, 2017                     Respectfully submited,


                                          By:    *s/ Alice Powers*
                                                 _____
                                                 John Cardinal Parks
                                                 Alice Conway Powers
                                                 Ian R. Rainey
                                                 LEWIS BRISBOIS BISGAARD & SMITH  LLP
                                                 1700 Lincoln Street, Suite 4000
                                                 Denver, Colorado 80203
                                                 (303) 861-7760
                                                 *Attorneys for Plaintiff Clear Creek Consulting,*
                                                 *Inc.*

Plaintiff's Address:
285 Century Pl. #200
Louisville, CO 80027